IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.  No. CIV 98-1103 MV/RLP

$180,770.00 in U.S. CURRENCY,

    Defendant,

and

ROBERT LEEN
a/k/a JOSH LEEN,

    Claimant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Dismiss and/or Strike Claimant Robert Leen's Answer, filed February 10, 2000 **[Doc. No. 18]**, Plaintiff's Motion for Summary Judgment Regarding the Right, Title, and Interest of Claimant Robert Leen, filed February 10, 2000 **[Doc. No. 20]**, Claimant's Motion to Allow the Filing of Claimant's Answer to the Plaintiff's Motions and Motion to Suppress, filed February 17, 2000 **[Doc. No. 22]**, and Claimant's Motion to Suppress, filed February 17, 2000 **[Doc. No. 25]**. The Court, having considered the motions, briefs, relevant law, and being otherwise fully advised, finds that Plaintiff's Motion to Dismiss or Strike Claimant's Answer is well taken and will be granted, Plaintiff's Motion for Summary Judgment will be denied as moot, Claimant's Motion to Allow Filing Answers and Motion is well taken and will be granted, and Claimant's Motion to Suppress will be denied as moot.

## BACKGROUND

In this case, the United States seeks to forfeit the defendant currency under 21 U.S.C. § 881(a)(6) which authorizes forfeiture of goods, money and real property which the United States has probable cause to believe may be substantially connection with illegal drug transactions.[1]

On January 13, 1998, Drug Enforcement Administration (DEA) agents encountered Claimant Robert Leen a/k/a Josh Leen ("Leen") on the west bound Amtrak Train when it made a scheduled stop in Albuquerque, New Mexico. Agent John Clayborne ("Clayborne") questioned Leen, requesting identification, asking about the nature of his trip, and inquiring about Leen's luggage. Clayborne requested permission from Leen to search his luggage and Leen denied consent. Clayborne then asked Leen for consent to have a narcotics detection canine examine his luggage. Leen denied that request, but told Clayborne he could use a canine to examine the hallway area near his room on the train. Canine Suzie, a certified drug detection dog, exhibited an interest in front of the door to Leen's room. Subsequently Clayborne approached Leen in the lounge car of the train and told him he was going to detain Leen's luggage for a canine search. Clayborne removed Leen's

---

[1]21U.S.C. § 881(a) provides in relevant part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

luggage, consisting of a large, black Tumi suitcase and a smaller bag, from the room. Clayborne placed the luggage in the common area and had another DEA agent examine the luggage area with the canine. Suzie alerted positively to the odor of controlled substances in the large Tumi suitcase. Clayborne advised Leen that he was seizing the suitcase and would seek a warrant to search it. He gave Leen a receipt for his suitcase. Clayborne received a search warrant to search the Tumi suitcase and found various items, such as clothing, and currency totaling $180,770.

On March 6, 1998, Leen filed a claim with the DEA pursuant to Rule 6(C)(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims, demanding restitution of his suitcase and the contents, including the currency, and claiming a right to defend the action as the possessor of the defendant property.

Leen does not own the defendant currency and did not acquire the currency through earned wages. During his deposition in this action, Leen refused to answer questions regarding the source of the currency or why he had it, invoking the Fifth Amendment right against self-incrimination. In particular, he refused to answer questions about his encounter with the DEA agents on the train on January 13, 1998; the source of cash he used to purchase his train ticket; the source of the currency, including identifying documents or other tangible evidence showing the source of the money; the packing of the suitcase which contained the currency; and the basis for his contention that the currency was not the proceeds of illegal drug trafficking. Leen testified at his deposition that he did not possess the currency, but in his response to Plaintiff's motion to strike or dismiss Leen's answer, Leen attached an affidavit in which he stated that at the time he said he did not possess the currency, he believed that "possess" meant "own." Leen's affidavit further states that he did possess the currency.

3

**ANALYSIS**

**I. Motion to Allow Filing of Claimant's Answers and Motion**

An initial issue which the Court must address is whether Leen should be permitted to file his responses to Plaintiff's motions and his motion to suppress. Pursuant to the Initial Pre-Trial Order, the parties were required to submit motion "packages," which include the motion, response, and reply briefs as required by D.N.M. LR-Civ. 7.3(5), no later than February 17, 2000. This motions deadline was also discussed with the parties by United States Magistrate Judge Puglisi at the status conference. Despite this clear deadline and the fact that Plaintiff submitted its motions to Leen with sufficient time for Leen to respond by the motions deadline, Leen failed to respond to Plaintiff's motions in compliance with the motion package rule. Further, Leen filed his motion to suppress on February 17, once again disregarding the local motions package rule and filing it too late to allow Plaintiff to respond by the package deadline. Plaintiff urges the Court to deny Leen's motion to allow him to file his responses and motion, arguing that the motion package deadline was clear and that the Court should not allow this inexcusable delay. Though the Court agrees that the deadline was clear, it will allow the filing of Leen's responses and motion. Leen's attorney, located in California, should have been more diligent in understanding and complying with the local New Mexico district rules, and should have obtained local counsel long ago.[2] Because the Court finds that there is no prejudice to the United States by allowing the filing of the briefs submitted the Court will accept them. However, the Court will not tolerate further inexcusable delays by Leen, and expects Leen's attorney to familiarize himself with and to comply with the local rules and all other applicable rules and deadlines.

---

[2]On April 14, 2000, this Court ordered Leen's California counsel to associate with local counsel within ten days as required by D.N.M. LR-Civ. 83.3(3). Counsel has complied with this requirement.

**II. Motion to Dismiss and/or Strike Claimant's Answer**

Whether a claimant has standing to challenge a forfeiture action is a threshold issue which determines whether the court has the power to entertain the action. *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (citing *In re Gucci*, 126 F.3d 380, 387-88 (2d Cir. 1997)). A claimant seeking to challenge a governmental forfeiture action must establish that he or she has both standing under the relevant statute and standing under Article III of the Constitution required in any action brought in federal court. *Id.* (citing *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998)). In this case, Plaintiff moves the Court to dismiss and/or strike Claimant's Answer on the basis that Leen lacks standing, under both the applicable statute and Article III, to assert a claim to the defendant currency.[3] To establish statutory standing, a claimant asserting a right to seized property which is subject to a forfeiture action in rem must file a verified claim within ten days after process has been executed, unless the court grants an extension. *See* Supplemental Rules for Certain Admiralty and Maritime Claims, Rule 6(C)(6). Plaintiff argues that Leen has not met this statutory standing requirement, but the Court need not assess this issue because, as explained below, it finds Leen does not have constitutional standing, and dismisses his claim on this basis.

To establish Article III standing in a forfeiture action, a claimant must have "a colorable ownership, possessory or security interest in at least a portion of the defendant property." *$515,060.42*, 152 F.3d at 497 (citing cases). Though a claimant need not prove the merits of his or

---

[3]The introductory paragraph in Plaintiff's brief states that it moves to dismiss Claimant's answer in part, pursuant to Federal Rule of Civil Procedure 12(f), but then fails to make any argument under that rule or cite any relevant case law. Accordingly, the Court will not assess any Rule 12(f) basis for dismissal.

her underlying claim to establish standing, the claimant must claim a facially colorable interest in the seized property. *Id.* at 497-98 (citations omitted). An ownership interest is certainly sufficient to satisfy the standing requirement, but a possessory interest may also create standing. *Id.* However, because of concerns about "straw man" transfers, mere physical possession is insufficient to create standing. *Id.* A claimant asserting a possessory interest in the seized property must offer some explanation or contextual relationship to the seized property. "The assertion of simple physical possession of property as a basis for standing must be accompanied by factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *Id.*; *see also United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994); *United States v. $321,470.00 in U.S. Currency*, 874 F.2d 298, 302, 304 (5th Cir. 1989); *Mercado v. U.S. Customs Service*, 873 F.2d 641, 644 (2d Cir. 1989) ("a naked claim of possession . . . is not enough [and t]here must be some indication that the claimant is in fact a possessor, and not a simple, perhaps unknowing custodian"). The requirement that the claimant must give some explanation of his or her possessory interest in the seized property is not a stringent one. For example, a claimant's assertion that he was holding the seized money as a bailee for his brother has been held to establish standing, *United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987), as has a claimant's explanation that she was carrying the seized money for her husband. *United States v. $122,043.00 in U.S. Currency*, 792 F.2d 1470, 1473 (9th Cir. 1986). In *$191,910.00*, the Ninth Circuit found that the claimant had established standing where he stated that he owned some of the seized money and that he was carrying the rest for a friend. *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994). The court explained that while unexplained possession of the seized property

6

is insufficient to create standing, "where a claimant asserts a *possessory interest* and provides some explanation of it (e.g., that he is holding it for a friend), he will have standing." *Id.* (emphasis in the original).

In another illustrative case which seems to require more explanation that the cases above, the court found that the claimant did not have standing where the seized money was in the truck he was driving, the claimant asserted there was nothing "wrong" with the money, he denied that he owned or controlled the money, and he stated that he was carrying the money for his boss who he implied had skimmed the money from a business. *$321,470.00*, 874 F.2d at 302, 304. The claimant argued that he was an assignee, but the Fifth Circuit rejected this argument because there was no evidence of a valid assignment. *Id.* at 304. While acknowledging that a bailee has standing to attack a forfeiture action of property subject to a colorably lawful bailment, the court found the claimant had not established he was a bailor, but rather a courier. *Id.* The court stated:

> a courier carrying cash from an unknown owner to an unknown recipient, resolute in his determination to give no explanation except that he was asked to transport cash, the ideal mule for drug traffickers, must be prepared to demonstrate that he has a lawful possessory interest. Unexplained naked possession of a cash hoard in the factual setting of this case does not rise to the level of the possessory interest requisite for standing to attack the forfeiture proceeding." *Id.*

In *$515,060.42*, the Court of Appeals held that the claimant organization established a sufficient possessory interest to have standing where the Government's complaint asserted that the person from whose home the funds were seized operated unlawful gambling for the claimant organization and the claimant organization asserted an ownership interest in the seized funds and stated that lawful charitable bingo games were the source of some of the money. *$515,060.42*, 152 F.3d at 499-500. As to the individual claimant, the Court found that he too had standing where the

7

bulk of the seized money was taken from his room and there was evidence regarding his role in the bingo operations that were the subject of the investigation leading to the seizure. Though relying in part on the individual claimant's constructive possession of the funds, the court was careful to note that it was "not altering the necessity of factual support for a colorable interest in seized property," but that there was evidentiary support for the individual claimant's interest. *Id.* at 500. Therefore, Leen's reliance on *$515,060.42* for the proposition that constructive possession, alone, is sufficient to confer standing is not persuasive.

The other case upon which Leen relies for this assertion is a case in which the Eleventh Circuit held that the claimant had constitutional standing to challenge the forfeiture of money found in a car registered to him when he claimed he was a bailee. *United States v. $260,242.00 in U.S. Currency*, 919 F.2d 686, 687-88 (11th Cir. 1990). The court reasoned that the claimant "had constructive possession of the money in his trunk, and a possessory interest *generally* is constitutionally sufficient for claims in forfeiture actions." *Id.* (emphasis added) (court did not explain its use of the word "generally") (citing *United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987)). This one case in which apparently the court held that constructive possession, without more, was sufficient to establish a claimant's Article III standing in a forfeiture action contradicts the many cases cited above which have held that physical possession is not sufficient by itself to create standing. This Court declines to follow this apparently anomalous holding, but rather applies the well-established rule that a claimant seeking to challenge a forfeiture proceeding must give *some* explanation as to his relationship to the seized property, which can be as simple as stating that he or she was holding the property for some other person.

In this case, Leen asserts that his "possession of his luggage inside the train compartment

8

confers standing." *Claimant's Opposition*, at 4. As explained, physical possession, alone is insufficient to confer standing. A claimant must give some explanation of his relationship to the seized property. *See $191,910.00*, 16 F.3d at 1058. Leen has failed this to meet this requirement. He has given conflicting statements about whether or not he possessed the defendant money, stating at his deposition that he did not possess it, and later submitting an affidavit with his response brief stating that he did possess it. The Court is willing to accept this correction of Leen's deposition testimony even though, as Plaintiff points out, he had the chance to do so before the deposition was finalized and failed to do so. However, this assertion alone, without offering *some* additional context or explanation is insufficient. At his deposition, Leen refused to answer questions about his relationship to the seized funds, asserting his Fifth Amendment right not to incriminate himself. While he clearly has the right to do so, without any explanation of Leen's possessory interest in the defendant money, he does not have Article III standing to challenge the forfeiture of these funds.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Dismiss and/or Strike Claimant Robert Leen's Answer **[Doc. No. 18]** is hereby **granted**, Plaintiff's Motion for Summary Judgment Regarding the Right, Title, and Interest of Claimant Robert Leen **[Doc. No. 20]** is hereby **denied as moot**, Claimant's Motion to Allow the Filing of Claimant's Answer to the Plaintiff's Motions and Motion to Suppress **[Doc. No. 22]** is hereby **granted**, and Claimant's Motion to Suppress **[Doc. No. 25]** is **denied as moot**. Leen's claim is hereby **dismissed**.

**DATED** this 17th day of May, 2000.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE